## HINDS *v.* BALLOU.

</div>

Where H received a deed of certain land, and at the same time, and as part of the same transaction, reconveyed the land in mortgage to his grantor; — *Held*, that the wife of H was not entitled to dower as against such mortgage.

Where one, having a right of redemption, redeems the mortgaged premises by the payment of money, the transaction will be treated as an assignment of the mortgage, if this is manifestly for the interest of the party so redeeming, and is not inconsistent with the justice of the case, where no contrary intent is expressed or necessarily implied.

The quitclaim deed of a mortgagee in possession is sufficient to transfer his interest under the mortgage.

Where L, having acquired the right of H, the mortgagor, redeemed the land mortgaged with his own money, and then conveyed it for a valuable consideration by deed of quitclaim to B; — *Held*, that the widow of H was not entitled to dower as against B, until she had offered to contribute her reasonable proportion of the money paid by L to redeem the mortgaged premises.

WRIT OF DOWER. Plea, husband not seized during coverture. By agreement of parties the case was tried by the court; an auditor to be appointed to assess damages, if judgment should be rendered for the plaintiff. The court found the facts to be as follows:

October 28, 1826, Samuel Hudson conveyed the farm, in which dower is demanded, to Elisha Hinds, the plaintiff's husband, by warrantee deed. On the same day Hinds mortgaged the farm to Hudson to secure the performance of the condition of a bond from Hinds to Hudson and wife, to support them during their lives.

December 27, 1834, Hinds executed three several mortgages, one to Mary E. Hinds, one to Amanda Hinds, and one to Hannah Hinds, of three several parts of the farm, and these three parts included the whole farm.    September 12, 1840, Hinds' equity of redemption was sold on execution to Elijah Farr.    September 2, 1842, Farr conveyed his right by quitclaim deed to one Humphrey, who had married Mary E. Hinds after the execution of the mortgages. August 31, 1842, Hannah Hinds and one Pratt, and his wife Amanda (formerly Amanda Hinds), assigned their mortgages to Humphrey.    September 6, 1842, Humphrey quitclaimed all his interest to one Lewis, who, after having conveyed his interest and received it back again, finally conveyed to the defendant September 22, 1857.

Elisha Hinds supported Hudson upon the farm till about 1839, when he ceased to support him and left the farm.    In 1841 Hudson lived on the farm, and had a man to carry it on.    In 1842 the town commenced to support Hudson as a pauper, and took possession of the farm, claiming Hudson's rights.    The town incurred expense in supporting Hudson to the amount of about $150, and caused legal proceedings to be instituted to secure Hudson's rights in the farm.

When Lewis received his conveyance from Humphrey, it was understood and agreed by Lewis, Humphrey, Hudson, and the town, that Hudson's support was secured upon the farm; that Lewis should pay the town all its charges for supporting Hudson, should support Hudson during his life, and pay Humphrey the amount of six notes.    Lewis went on the farm, supported Hudson during his life, and paid the town.    The town refused to discontinue the proceedings to secure Hudson's rights, unless Lewis would pay the town the amount expended by it in supporting Hudson.    It was understood, by all parties concerned or interested, that Lewis was to own the farm upon the condition that he should pay the town, Humphrey, and support Hudson.

The questions of law arising upon the foregoing case were reserved.

*Carleton*, for the demandant.

*H. & G. A. Bingham*, for the tenant.

BARTLETT, J.   The question is raised as to the rights of Hudson. Indeed, he consented to the arrangement made between Lewis and Humphrey.   *Eastman* v. *Batchelder*, 36 N. H. 141; *Bethlehem* v. *Annis*, 40 N. H. 43.   The plaintiff is not entitled to dower as against the mortgage to Hudson, which was executed at the same time with his deed to her husband.   *Adams* v. *Hill*, 29 N. H. 209; *Bullard* v. *Bowers*, 10 N. H. 502.   Lewis, to whom the interest of Hinds had been conveyed, expended money in performing the condition of the mortgage, to prevent a foreclosure; and his payment of money to redeem will operate as a discharge or an assignment, substituting him in place of the mortgagee, as

may best serve the purposes of justice; *Adams* v. *Hill*, 29 N. H. 211; and as it would have been manifestly for Lewis' interest to treat the transaction as an assignment, such an intention is to be presumed, as it would not be inconsistent with the justice of the case, and as no contrary intent is expressed or necessarily implied. *Bell* v. *Woodward*, 34 N. H. 96; *Wilson* v. *Kimball*, 27 N. H. 307; *Hunt* v. *Hunt*, 14 Pick. 384; 1 Hill. Mort. 339. As against the plaintiff the mortgage must have been regarded as subsisting in Lewis' hands, after his performance of the condition, for his security.

But it is suggested that Lewis' agreement to support Hudson formed part of the consideration for the conveyance to him, and therefore the case is to be treated as one where a part of the consideration is reserved by the grantee for the payment of the mortgage debt, as in *Bullard* v. *Bowers*, 10 N. H. 500, and *Adams* v. *Hill*, 29 N. H. 212. In those cases the reservation or application of part of the consideration money for the discharge of the mortgage was made by agreement between the demandant's husband and his vendee, on the sale of the husband's equity of redemption, and was therefore treated as virtual payment by the husband; but here Hinds was in no way party to the arrangement, and the transaction can not in any sense be regarded as a discharge of the mortgage by him, or with his property.

So far as the demandant is concerned, then, Lewis stood as the holder of the mortgage, and was in possession of the mortgaged premises, and his deed would transfer his interest in the mortgage; *Lamprey* v. *Nudd*, 29 N. H. 304; *Smith* v. *Smith*, 15 N. H. 66; even though it was a deed of quitclaim. *Thorndike* v. *Norris*, 24 N. H. 460; *Hunt* v. *Hunt*, 14 Pick. 380; 1 Hill. Mort. 339; *Hutchins* v. *Carlton*, 19 N. H. 514; see *Kinnear* v. *Lowell*, 34 Me. 300, and *Freeman* v. *McGreen*, 15 Pick. 82. It follows that, as against the tenant who holds Lewis' title, the demandant is not entitled to dower, as she has not offered to contribute her reasonable proportion of the money expended by Lewis to perform the condition of the mortgage. *Clough* v. *Elliott*, 23 N. H. 182; *Bullard* v. *Bowers*, 10 N. H. 504; *Gammon* v. *Freeman*, 31 Me. 246; *Carll* v. *Butman*, 7 Greenl. 102; *Cass* v. *Martin*, 6 N. H. 26; *Rossiter* v. *Cossitt*, 15 N. H. 43; *Robinson* v. *Leavitt*, 7 N. H. 100; *Woods* v. *Wallace*, 30 N. H. 388; *Adams* v. *Hill*, 29 N. H. 202; *Hastings* v. *Stevens*, 29 N. H. 564.

There must be judgment for the tenant, unless the demandant at the trial term shall elect to become nonsuit.